1  H.H. (SHASHI) KEWALRAMANI
   S|H|K Legal, APC
2  P.O. Box 18714
   Anaheim, CA 92807
3  Telephone: (714) 335-4590
   Fax: (714) 363-3822
4  Email: shashi@shklegal.com

5  JONATHAN T. SUDER (*Pro Hac Vice To Be Filed*)
   BRETT M. PINKUS (*Pro Hac Vice To Be Filed*)
6  RICHARD A. WOJCIO, JR. (*Pro Hac Vice To Be Filed*)
   FRIEDMAN, SUDER & COOKE
7  Tindall Square Warehouse No. 1
   604 East 4th Street, Suite 200
8  Fort Worth, Texas  76102
   Telephone:  (817) 334-0400
9  Facsimile:  (817) 334-0401
   Email:  jts@fsclaw.com
10 Email:  pinkus@fsclaw.com
   Email:  wojcio@fsclaw.com
11
   Attorneys for Plaintiff
12 COMMERCIAL COPY INNOVATIONS, INC.

13

14 **UNITED STATES DISTRICT COURT**

15 **CENTRAL DISTRICT OF CALIFORNIA,**

16 **SOUTHERN DIVISION**

17

| COMMERCIAL COPY INNOVATIONS, INC., | CASE NO. _SA CV 17-1149_____ |
|---|---|
| Plaintiff, | |
| vs. | **ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT** |
| LEXMARK INTERNATIONAL, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

17  COMMERCIAL COPY INNOVATIONS,
    INC.,
18              Plaintiff,
19          vs.
20  LEXMARK INTERNATIONAL, INC.,
21              Defendant.
22
23
24
25
26
27
28

Plaintiff COMMERCIAL COPY INNOVATIONS, INC. files this Original Complaint against Defendant LEXMARK INTERNATIONAL, INC. alleging as follows:

## I.  THE PARTIES

1.      COMMERCIAL COPY INNOVATIONS, INC. ("Plaintiff" or "CCI") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 600 Anton Boulevard, Suite 1350, Costa Mesa, California 92626, within the Central District of California.

2.      Defendant LEXMARK INTERNATIONAL, INC. ("Lexmark") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 740 West New Circle Road, Lexington, KY 40550.  Lexmark may be served with process by serving Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California, 95833.

## II.  JURISDICTION AND VENUE

3.      This is an action for infringement of several United States patents.  Federal question jurisdiction is conferred to this Court over such action under 28 U.S.C. §§ 1331 and 1338(a).

4.      Lexmark maintains an established and regular place of business within the Central District of California, Southern Division.  Lexmark operates a sales office for business channel and OEM sales of its products, including the Accused Products as described herein, located at 2211 Michelson Drive, Irvine, California 92612.

5.      In addition, Lexmark provides to prospective customers, via its website at https://www.lexmark.com/en_us/products/hardware/dealer-locator.html, a listing of authorized dealers selling Lexmark products which is searchable by location.  Lexmark has at least eight authorized dealers within Orange County, California, alone, selling Lexmark products, including the Accused Products described herein.

6.      These offers for sale and sales of Accused Products made by or on behalf of Lexmark within this District comprise infringing actions giving rise to the claims of patent infringement alleged herein.

COMPLAINT FOR INFRINGEMENT OF PATENT

7.     Upon information and belief, Lexmark had sufficient minimum contacts with the Central District of California, Southern Division such that this venue is fair and reasonable. Defendant has committed such purposeful acts and/or transactions in this District that they reasonably should know and expect that they could be hailed into this Court as a consequence of such activity.  Lexmark has transacted and, at the time of the filing of this Complaint, continues to transact business within the Central District of California, Southern Division.

8.     Upon information and belief, Lexmark uses, offers for sale, sells, and/or purchases printer and toner products in the Central District of California, Southern Division. Lexmark directly and/or through its distribution network comprising the Lexmark website, sales offices, and authorized dealers, places infringing products or systems within the stream of commerce, directed at this district with the knowledge and/or understanding that those products will be sold and/or used in the Central District of California, Southern Division.

9.     For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b).

### III.    BACKGROUND AND FACTS

10.     CCI has acquired all rights and title in and to U.S. Patents Nos. 6,197,466 ("the '466 Patent") and 6,453,127 ("the '127 Patent") from the Eastman Kodak Company ("Kodak") for the purpose of enforcing the rights embodied therein.  These patents are sometimes referred to collectively, hereinafter, as "the Asserted Patents" and each was developed by Kodak as part of Kodak's research and development activities performed in furtherance of Kodak's design, manufacture, and selling of printers and printing accessories and devices.

11.     Kodak is a world-renowned U.S.-based company, founded in 1888, which has been an industry leader in the design and manufacture of cameras and film, digital imaging devices, printers, ink, toner, and related devices.  Over the nearly 130 years that Kodak has been in business, Kodak has developed many valuable innovations in the photographic, imaging, and printing industries which led to the issuance of thousands of patents, including the Asserted Patents.  Many of these innovations were directly developed by engineers and scientists working

COMPLAINT FOR INFRINGEMENT OF PATENT

1  at Kodak Research Laboratories as part of Kodak's continuous work to advance photography,

2  imaging, and printing technology.

3      12.    Lexmark is one of the largest manufactures and sellers of office equipment

4  including printers and toner, among other related products, in the world.  Lexmark makes, uses,

5  imports, offers for sale, and sells its office equipment products, including printers implemented

6  with Lexmark's Remote Operator Panel (referred to, collectively, as "Lexmark Printers").

7  Additionally, Lexmark makes, uses, imports, offers for sale, and sells electrophotographic toner

8  ("Lexmark Toner") for use with laser printers and copiers to customers, consumers, businesses,

9  and end users of the products.   These Lexmark Printers and Lexmark Toner products are

10 sometimes referred to, collectively, as the "Accused Products."

11     13.    Lexmark uses, offers for sale, and/or sells the Accused Products within the

12 Central District of California, Southern Division, at its Irvine, California sales office and via

13 Lexmark's website at https://www.lexmark.com/.   Further, via its website, Lexmark directs

14 customers to both online retailers and Authorized Dealers within this District selling the Accused

15 Products.

16                        **IV.  PATENT INFRINGEMENT**

17                        **U.S. Patent No. 6,197,466 B1**

18     14.    CCI repeats and realleges all preceding paragraphs of this Complaint, as though

19 fully set forth herein.

20     15.    On March 6, 2001, United States Patent No. 6,197,466 B1 ("the '466 Patent") was

21 duly and legally issued for an "Electrophotographic Toner Surface Treated with metal Oxide."

22 The '466 Patent remains in force as of the filing of this Complaint.  A true and correct copy of

23 the '466 Patent is attached hereto as Exhibit "A" and made a part hereof.

24     16.    CCI is the owner of all right and title in the '466 Patent, including all rights to

25 enforce and prosecute action for infringement of the '466 Patent and to collect damages for all

26 relevant times against infringers of the '466 Patent.   Accordingly, CCI possesses the exclusive

27 right and standing to prosecute the present action for infringement of the '466 Patent by

28 Defendant.

COMPLAINT FOR INFRINGEMENT OF PATENT

17.    The '466 Patent generally discloses and claims toners comprising particles treated with metal oxides.  Metal oxides, such as titanium dioxide, silicon dioxide, or a combination thereof, are mixed with the toner particles in a manner causing embedment of metal oxide particles below the surface of toner particles.  The resulting toner composition may exhibit more stable triboelectric charging and may, therefore, improve image quality in electrophotographic printing operations.

18.    Without authority, consent, right, or license, and in direct infringement of the '466 Patent, Lexmark markets, uses, sells, offers for sale, manufactures, has manufactured, makes, has made, imports, and/or has imported systems or products which directly infringes at least Claim 9 of the '466 Patent.  By way of example, Lexmark make, uses, and sells the Lexmark Toner, including at least Lexmark 24015SA Black Toner used by the Lexmark E230, E232, E234, E240, E330, E332, E340, E342 printers, which infringes at least Claim 9 of the '466 Patent.

19.    Lexmark Toner is usable with Lexmark laser printer and copier products to accommodate electrophotographic printing.    The Lexmark Toner comprises an electrophotographic toner composition and is described as such in, at least, Lexmark's product specification.

20.    Lexmark Toner comprises toner particles as well as metal oxide particles dispersed within the toner particles.   The metal oxide content of Lexmark Toner is between 0.1 to 5.0 weight percent of the toner composition and consists of silicon and/or titanium oxides.  By way of example, a sample of Lexmark Toner collected from a cartridge of Lexmark 24015SA Black Toner, was analyzed inductively coupled plasma mass spectrometry analysis and was found to comprise about 0.57% by weight, collectively, titanium oxide and silicon oxides.  These results are believed to be representative of all Lexmark Toner products.

21.    At least a portion of the metal oxide particles comprising titanium dioxide, silicon dioxide, or mixtures thereof, within the Lexmark Toner are embedded below the surface of the toner particles.  By way of example, using the sample of Lexmark 24015SA Black Toner, several such metal oxide particles were found embedded below the surfaces of toner particles via use of

COMPLAINT FOR INFRINGEMENT OF PATENT

HAADF STEM tomography imaging and energy-dispersive X-ray spectroscopy analysis. These results are believed to be representative of all Lexmark Toner products.

22. CCI expressly reserves the right to assert additional claims of the '466 Patent against Lexmark.

23. CCI has been damaged as a result of the infringing conduct of Lexmark. Lexmark is, thus, liable to CCI in an amount that adequately compensates for their infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

24. Based on Lexmark's respective objective recklessness, CCI is further entitled to enhanced damages under 35 U.S.C. § 284.

## V.  PATENT INFRINGEMENT

### U.S. Patent No. 6,453,127 B2

25. CCI repeats and realleges all preceding paragraphs of this Complaint, as though fully set forth herein.

26. On September 17, 2002, United States Patent No. 6,453,127 B2 ("the '127 Patent") was duly and legally issued for an "Establishment at a Remote Location of an Internet/Intranet User Interface to a Copier/Printer." The '127 remains in force as of the filing of this Complaint. A true and correct copy of the '127 Patent is attached hereto as Exhibit "B" and made a part hereof.

27. CCI is the owner of all right and title in the '127 Patent, including all rights to enforce and prosecute action for infringement of the '127 Patent and to collect damages for all relevant times against infringers of the '127 Patent. Accordingly, CCI possesses the exclusive right and standing to prosecute the present action for infringement of the '127 Patent by Defendant.

28. The '127 Patent generally discloses and claims printing apparatuses configurable to operate in response to instructions provided by remote users. Remote users interface with the printing apparatus using remote computers to configure and command its marking engine via a

network web server and downloadable software. An applet provides a printer interface display screen on a remote computer viewable by the remote users of the printing apparatus.

29.    Without authority, consent, right, or license, and in direct infringement of the '127 Patent, Lexmark markets, uses, sells, offers for sale, manufactures, has manufactured, makes, has made, imports, and/or has imported Lexmark Printers that directly infringe at least claim 1 of the '127 Patent.

30.    Lexmark Printers are implemented with a Remote Operator Panel utility which accommodates access by remote users to provide configuration and operating instructions to the Lexmark Printers via a web browser. Use of the Remote Operator Panel allows remote users to interface with the marking engines of the Lexmark Printers to view one or more statuses of the Lexmark Printers, as well as to configure and command operation of the Lexmark Printers. Upon information and belief, the Remote Operator Panel is found on all recent and current Lexmark model printers. By way of example, this includes at least Lexmark's C740, C790, C925, C950, C4150, CS310, CS510, CS720, CS725, CS820, CX510, CX725, CX820, CX825, CX860, MS510, MS610, MS710, MS810, MS910, MX410, MX510, MX611, MX710, MX810, MX910, X740, X790, X925, X950 series printers.

31.    The Lexmark Printers include a web server accessible via a web browser upon entry of an IP address or host name of a Lexmark Printer in the web browser. Remote users can monitor the status of the Lexmark Printer and associated print jobs, configure one or more print settings of the Lexmark Printer, and initiate/cancel printing operations over a network using the Remote Operator Panel utility accessing the web server of the Lexmark Printer. The Remote Operator Panel utility operates as an applet using Java programming language.

32.    The Lexmark Printers are implemented with a memory storing document files and print job statuses which can be accessed from a control panel, or local user interface, of the Lexmark Printers or via the Remote Operator Panel utility to view their status or print the documents, among other operations.

33.    CCI expressly reserves the right to assert additional claims of the '127 Patent against Lexmark in relation to the Lexmark Printers, as well as other products of Lexmark.

COMPLAINT FOR INFRINGEMENT OF PATENT

34.     CCI has been damaged as a result of Lexmark's infringing conduct.  Lexmark is, thus, liable to CCI in an amount that adequately compensates for their infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

35.     Based on Lexmark's objective recklessness, CCI is further entitled to enhanced damages under 35 U.S.C. § 284.

## VI.  JURY DEMAND

36.     Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.     Judgment that one or more claims of the Asserted Patents have been directly infringed, either literally or under the doctrine of equivalents, by Defendant, or judgment that one or more of the claims of the Asserted Patents have been directly infringed by others and indirectly infringed by Defendant, to the extent Defendant contributed to or induced such direct infringement by others;

b.     Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, including enhanced damages as permitted by 35 U.S.C. § 284;

c.     That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d.     That the Court declare this an exceptional case and award Plaintiff its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

/ / /

COMPLAINT FOR INFRINGEMENT OF PATENT

e.    That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

DATED: July 6, 2017                    /s/ H.H. (Shashi) Kewalramani

H.H. (SHASHI) KEWALRAMANI
S|H|K Legal, APC
P.O. Box 18714
Anaheim, CA 92807
Telephone:  (714) 335-4590
Fax: (714) 363-3822
Email: shashi@shklegal.com

Attorney for Plaintiff
COMMERCIAL COPY INNOVATIONS, INC.

Of Counsel:

Jonathan T. Suder
Brett M. Pinkus
Richard A. Wojcio, Jr.
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas  76102
Telephone:  (817) 334-0400
Facsimile:  (817) 334-0401
Email:  jts@fsclaw.com
Email:  pinkus@fsclaw.com
Email:  wojcio@fsclaw.com

COMPLAINT FOR INFRINGEMENT OF PATENT